**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CASE NO. 5:11-CV-00024-R**

**SHAWN JACKSON**                                                                                          **PLAINTIFF**

**v.**

**MURRAY STATE UNIVERSITY, et al.**                                                    **DEFENDANTS**

**MEMORANDUM OPINION**

Defendants the Sigma Pi Fraternity International, Inc. ("International Fraternity") and the Gamma Upsilon Chapter of Sigma Pi Fraternity ("Gamma Chapter") (collectively "Defendants") have moved for summary judgment on all of the legal theories cited by Plaintiff Shawn Jackson in his complaint ("Jackson") (DN 15). Jackson has responded (DN 16) and Defendants have replied (DN 22). This matter is now ripe for adjudication. For the reasons that follow, Defendants' motion is GRANTED. As Jackson's claims are not cognizable against any party, this matter is hereby DISMISSED.

**BACKGROUND**

The present lawsuit revolves around a fraternity party hosted by the Gamma Chapter at Murray State University ("MSU"). During the party, Jackson, an African American, was forcibly removed from the festivities. He alleges that members of the fraternity violated his constitutional civil rights in doing so. To rectify the perceived injustice, Jackson filed this lawsuit against the International Fraternity, the Gamma Chapter, and all unknown members and officers of the Gamma Chapter.[1] Presently, Defendants move for summary judgment.

---

[1] The Court dismissed MSU and Randy Dunn, MSU's President, as parties in a previous memorandum and opinion on July 31, 2011. *See Jackson v. Murray State Univ.*, 834 F. Supp. 2d

1

Given the posture of this motion, the facts are stated from Jackson's perspective.[2] Jackson enrolled at MSU during the spring semester of 2007 and attended the university until the end of the 2009 fall semester. He could not recall in his deposition if he was enrolled during the spring semester of 2010.

In the days preceding February 19, 2010, members of the Gamma Chapter scheduled a party at their fraternity house. The party's organizers advertised the event to MSU students on the social networking website Facebook, indicating that the festivities would begin at 10:00 p.m. on February 19 and end at 2:00 a.m. on February 20. Within the Facebook invitation was a list of conditions for entry into the party, including Gamma Chapter's right to deny entry to anyone. The restrictions were supplemental to MSU's Greek Social Policy, which stated that all attendees of Greek-sponsored events must be issued and wear wristbands to designate the attendee's age.

Jackson learned of the party on Facebook and notified its organizers through the website that he would attend. He planned to go with his cousin, Antonio Jackson ("Antonio"). Antonio recruited his step-sister to give them a ride to the party and the trio arrived between 12:15 and 12:30 a.m.

At the entrance to the fraternity house, Jackson and Antonio paid a three-dollar entrance fee. Antonio and his step-sister were provided wristbands upon entry but Jackson was not. He states that the member of the Gamma Chapter distributing wristbands ran out before he could receive one. Nevertheless, Jackson was allowed to enter.

---

609 (W.D. Ky. 2011).

[2] The parties rely heavily on Jackson's deposition testimony in their motions but neither has attached the document as an exhibit for the Court to consider. As such, the Court uses the parties' summary of his deposition.

Roughly an hour after his arrival at the party, Jackson was approached and accosted by a drunken reveler inside the fraternity house. The individual inquired about his wristband, whereupon the two argued about why Jackson was without the identifying accessory. After a few moments of heated discussion, Jackson and the partygoer returned to the entrance of the house to talk about the issue further. Once there, Jackson says the individual "took a swing at him" and then told him repeatedly to "get out." Other people at the party restrained the belligerent individual but acceded to his demands that Jackson be removed from the party. Jackson was expelled shortly thereafter from the fraternity house.

Outside and with a crowd gathering at his back, Jackson proceeded to walk down the driveway and away from the house. Jackson states that some of the crowd's members began to yell racial slurs at him and ordered him to "get the fuck out." A few also threw rocks at him, two or three of which struck him in the legs. Afterwards, Jackson walked across town to his apartment.

Jackson brings suit against Defendants, asserting the following theories of recovery: (1) interference with the right to contract in violation of 42 U.S.C. § 1981, (2) violations of his Fourteenth Amendment substantive and procedural due process rights under 42 U.S.C. § 1983, (3) conspiracy to interfere with his civil rights in violation of 42 U.S.C. § 1985, (4) violations of the Kentucky Civil Rights Act and the Civil Rights Act of 1964, and (5) the state-law tort of outrage. Complaint, DN 1. The Court divides its analysis accordingly.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. 42 U.S.C. § 1981

Jackson says that defendants and he entered into a contractual agreement when he paid the three-dollar cover charge to gain access to the party. Complaint, DN 1 ¶ 20. Citing the Civil Rights Act of 1991, 42 U.S.C. § 1981, Jackson now contends that Defendants were racially motivated in interfering with his right to make and enforce contracts.

Section 1981 "protects the equal right of 'all persons within the jurisdiction of the United

4

States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006) (quoting 42 U.S.C. § 1981(a)). "Making and enforcing contracts" encompasses "'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)). Racial discrimination is a necessary element of the claim, i.e., a plaintiff must be able to establish racial discrimination in order to set forth an action under § 1981. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 378 (6th Cir. 1984) (holding "[p]urposeful discrimination is a prerequisite to liability under section 1981").

The Court concludes that Jackson's claim under § 1981 is defective for several reasons. First, accepting the premise that a cover charge may comprise the offer, acceptance, and consideration necessary for a contract, Jackson was removed because he lacked a wristband, not because he was an African American. The evidence shows that when the drunken partygoer confronted Jackson, the dispute corresponded with the absence of a wristband and not Jackson's race. *See* Defendants' Motion, DN 15 p. 5-6, 9 (citing Jackson Depo., p. 40-44, 47-48). Jackson concedes that the primary concern of the Gamma Chapter's members who expelled him from the party was the absence of a wristband. *See* Defendants' Motion, DN 15 p. 6-7 (citing Jackson Depo., p. 47-48). He also admits that the purpose for the wristbands was to manage attendance at the festivities and secure payment from all those who attended. *See* Defendants' Motion, DN 15 p. 5 (citing Jackson Depo., p. 30). In sum, Jackson's version of events belies the argument that the termination of his contract was pursued based on his race and not on the lack of a wristband. Relief under § 1981 does not follow under such circumstances. *See Domino*, 546 U.S. at 476 ("Absent the requirement that the plaintiff himself must have rights under the

5

contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to somebody's contract.").

Second, the bigoted remarks yelled by the crowd, which is the only direct evidence of racial discrimination, occurred after Jackson was ejected from the party and his contract canceled.  At least one circuit court has ruled that proof of racial discrimination after the performance of a retail contract will not support a claim under § 1981.  *See Kinnon v. Arcoub, Gopman & Assoc., Inc.*, 490 F.3d 886 (11th Cir. 2007).  In *Kinnon*, African American customers ordered delivery for a pizza from a retailer, but after a lengthy wait and repeated attempts to contact management of the store, they refused to pay for the meal when it arrived.  *Id*. at 888-89.  The owner of the pizza restaurant called the customers and left hateful messages that included racial slurs.  *Id*.  The customers sued, claiming breach of contract under § 1981 because the delay in delivery resulted from racial discrimination.  The Eleventh Circuit upheld the district court's grant of summary judgment on the customer's claims.  In so doing, the appellate court trivialized the bigoted phone calls since in the retail context, the "contractual relationship is based on a single, discrete transaction."  *Id*. at 892 (citation and quotation marks omitted).  It reasoned that the discriminatory messages were not a basis for relief as no continuing contractual relationship existed after the customer refused the pizza.  *Id*. at 892-93.

The similarities of *Kinnon* minimize the effect of the racial slurs that Jackson heard.  The contractual agreement that he proclaims interference with was the payment for entry into the party.  Complaint, DN 1 ¶ 20 ("The wrongful conduct of Defendants interfered [sic] with his right to enforce the contract to enter the Gamma party and remain unrestricted without being

harassed, physically assaulted, and emotionally and physically forced out of the party, due to Plaintiff's race."). As the party's attendees shouted racial slurs after he exited and started walking away from the fraternity house, the insults hurled at his back do not bear upon his claim for contractual interference.

Third, assuming *arguendo* that these shortcomings did not vitiate his § 1981 claim, Jackson has not presented evidence sufficient to establish pretext. To prevail on a claim of race discrimination pursuant to § 1981, plaintiffs must overcome the burden-shifting test utilized in Title VII claims. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001). The burden-shifting test requires that:

> a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. To prevail, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason is not its true reason but a pretext for discrimination.

*Id*. (citations omitted). For pretext, a plaintiff must demonstrate the following elements with respect to the defendant's alternative explanation for the alleged discriminatory acts: "'1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action.'" *Id*. at 879 (quoting *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)).

Jackson has produced no evidence to disabuse the Court of the notion that his expulsion was founded upon his failure to secure a wristband. He acknowledges that he was not wearing a wristband and admits that the device was necessary for entry and the means by which the organizers differentiated between the legitimate guests and the party crashers. *See* Defendants Motion, DN 15 p. 5 (citing Jackson Depo., p. 30). No evidence was offered that the members of

the Gamma Chapter arbitrarily or unfairly applied the wristband policy to Jackson.  Though the racially insensitive comments were unfortunate, they do not demonstrate pretext since they were uttered after Jackson was ejected from the party.  Jackson has not shown that his expulsion was linked to the missing wristband; thus, he cannot meet the third prong of the burden-shifting test.

Fourth, Jackson has not imputed any of the allegedly tortious behavior to the International Fraternity.  No proof has been produced that any member of the Gamma Chapter operated in a position of authority for the International Fraternity or could act on the organization's behalf.  The applicable law requires Jackson to establish that the International Fraternity was responsible for the discriminatory behavior through the theories of agencies or vicarious liability.  *See Alexander v. Local 496, Laborers' Intern. Union of N. Am.*, 177 F.3d 394, 409 (6th Cir. 1999) (common law agency theories governed whether international labor organization was liable for local labor organization's violations of § 1981); *see also Shaheen v. Yonts*, 394 F. App'x 224, 230 (6th Cir. 2010) (national fraternity not liable for tortious behavior of a local chapter's members without physical presence at the local level).  Fault for intentional torts may only be imputed to a principal if "the agent's conduct is within the scope of his agency and if, with the knowledge of the conditions, the principal intends the conduct or its consequences."  *Alexander*, 177 F.3d at 409.  The Court is without a basis to believe that the International Fraternity knew of or condoned the alleged racial discrimination.  As such, Jackson's claim against this party is speculative.

Because the Court finds Jackson's claim under § 1981 wanting in several respects, it is hereby dismissed.

## II. 42 U.S.C. § 1983

Jackson agrees in his response that as neither the International Fraternity nor the Gamma Chapter is a state actor, his claim pursuant to 42 U.S.C. § 1983 is improper. *See* Jackson Response, DN 16 p. 16. As such, it is dismissed.

## III. 42 U.S.C. § 1985

Jackson alleges that Defendants engaged in a conspiracy to infringe upon his constitutional rights, in violation of 42 U.S.C. § 1985. Although Jackson fails to pinpoint the provision of § 1985 upon which he is relying, his case would only be actionable under subsection (c) of the statute. *See Id*. § 1985(a)-(b). For such a claim, Jackson must show "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Briscoe v. Jackson*, 285 F. App'x 205, 208 (6th Cir. 2008) (quoting *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)).

Jackson theorizes that the members of the mob yelling and throwing rocks comprise the conspiracy that deprived him of his constitutional rights. According to Jackson, their group effort to insult and pelt him with stones constitutes the conspiratorial acts and joint agreement. The Court finds this rationale unavailing. Jackson has set forth "nothing more than the conclusory allegation that defendants acted in concert and, without more, failed to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive him of his civil rights." *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Overall, he has failed to construct a cognizable claim.

**IV. Title II of the Civil Rights Act, 42 U.S.C. § 2000a**

Though Jackson's complaint proposes that Defendants violated Title II of the Civil Rights Act, 42 U.S.C. § 2000a, he does not discuss this legal theory in his response to this motion or present any evidence to support it. Defendants advance that Jackson has failed to avail himself of the administrative remedies that were available to him under the Kentucky Human Rights Act, KRS § 344 *et. seq*. Defendants allege that this oversight divests the Court of jurisdiction.

Title II of the Civil Rights Act bars discrimination in places of public accommodation on the basis of religion, national origin, race, and color. *See* 42 U.S.C. § 2000a. It permits "a civil action for preventative relief, including a permanent or temporary injunction, to prohibit such discrimination in a place of public accommodation." *S.G. v. CBL & Assocs. Mgmt., Inc.*, No. 1-09-CV-83, 2010 WL 743731, at *2 (E.D. Tenn. Feb. 26, 2010) (citing 42 U.S.C. § 2000a-3(a)). Before action can be taken under this provision, where a state has a statutory analogue to the Civil Rights Act that authorizes a state organization to grant relief from the discriminatory practice, "no civil action may be brought under [the Civil Rights Act] before the expiration of thirty days after written notice of [the discrimination] has been given to the appropriate State or local authority." 42 U.S.C. § 2000a-3(c). Put another way, "[p]laintiffs are required to first avail themselves of the state administrative remedies before proceeding in federal court." *Halton v. Great Clips, Inc.*, 94 F. Supp. 2d 856, 861 (N.D. Ohio 2000) (citing *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 242 (6th Cir. 1990)).

The KCRA both outlaws discriminatory acts and establishes the Kentucky Human Rights Commission ("Commission"). KRS §§ 344.120, 344.150. Despite this statutory framework,

Jackson has not followed the procedure set forth in 42 U.S.C. § 2000a-3(c) by sending a complaint regarding the incident to the Commission within 30 days of its occurrence. As section 2000a-3(c)'s requirements are jurisdictional in nature and because Jackson has not complied, his claim is not properly before the Court. *See CBL & Assocs.*, 2010 WL 743731, at *2 (section 2000a-3(c) affects a court's jurisdiction). This precedent, coupled with Jackson's silence in his response, convinces the Court to dismiss this basis for relief.

### V. Kentucky Human Rights Act, KRS § 344.120

Jackson charges that Defendants contravened the Kentucky Human Rights Act, KRS § 344.120. Under the statute, it is unlawful "to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the ground of disability, race, color, religion, or national origin." KRS § 344.120. "Public place of accommodation" means "any place, store, or other establishment, either licensed or unlicensed, which supplies goods, or services to the general public which solicits or accepts the patronage or trade of the general public." KRS § 344.130.

Because the party was closed to the public, the Gamma Chapter's house was not a place of public accommodation. The invitation for the party was only available to those who maintained Facebook accounts and expressly limited participation to those possessing MSU student IDs. Moreover, Jackson cites no precedent under Kentucky law construing a college fraternity house as a building open to or supplying goods and services to the general public. The Court is disinclined to expand the reach of the Kentucky Human Rights Act without better guidance from the state's own courts. *Cf. Aarti Hospitality, LLC v. City of Grove City, Ohio*,

11

350 F. App'x 1, 6 (6th Cir. 2009) ("'[W]hen given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, [the district court] should choose the narrower and more reasonable path.'" (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004))). As presently constituted, the cause of action may not continue.

### VI. Outrage

Jackson's last claim is one for outrage under Kentucky law. He proclaims that Defendants are liable for the tort since the racial insults and rock projectiles caused him severe mental distress.

A prima facie case of outrage requires that a plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky ., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id*. at 788–89 (citing Restatement (Second) of Torts § 46(1) cmt. h (1965)).

Kentucky courts have "set a high threshold for outrage claims," *Stringer*, 151 S.W.3d at 791, and in Kentucky, "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.'" *Seitz*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts § 46(1) cmt. d (1965)). For example, Kentucky courts have found nothing to support a claim of outrage where the defendant:

> (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiff's property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of in the hospital"; (7) erected a billboard referencing defendant's status as a convicted child molester; (8) wrongfully garnished plaintiff's wages pursuant to a forged agreement; and (9) impregnated plaintiff's wife.

*Stringer*, 151 S.W.3d at 790–91 (internal citations omitted).

"It is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery." *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky. Ct. App.2007) (citing *Whittington v. Whittington*, 766 S.W.2d 73 (Ky. Ct. App. 1989)). The Court looks to "'the conduct of the offender rather than the subject of the conduct.'" *Stringer*, 151 S.W.3d at 788 (quoting *Burgess v. Taylor*, 44 S.W.3d 806, 809 (Ky. Ct. App.2001)).

Jackson's version of events does not create a cognizable claim. Though yelling racial slurs and throwing rocks are reproachful behavior, it does not satisfy the high bar for outrage established by Kentucky courts. In addition, Jackson provides no evidence that he has suffered emotionally or otherwise from the events at the fraternity party. These flaws operate as a bar to this claim.

13

### **VII. Miscellaneous Claims**

Jackson's response includes a series of arguments regarding the known and unknown members of the Gamma Chapter. He asserts that the party's organizers distributed beer to underage college students, in violation of several Kentucky statutes. Referencing Kentucky law that ostensibly permits private citizens to enforce the state's alcoholic licensing laws, Jackson asks the Court to permit him to continue this action against the individuals associated with the Gamma Chapter and collect damages in the state's stead.

No where in this section of Jackson's brief is any semblance of an actionable legal claim. He cites no cases that would permit him to enforce against Defendants the criminal and licensing statutes governing alcoholic beverages. Even if the Court were so inclined, this claim was not set forth in Jackson's complaint. Accordingly, the Court need not consider this new theory of recovery at this late stage in the litigation. *See Gomez v. LSI Integrated LP*, 246 F. App'x 852, 854 (5th Cir. 2007) (declining to consider a claim that was not pursued by litigant before summary judgment response); *Roeder v. Am. Postal Workers Union, AFL-CIO,* 180 F.3d 733, 737 n. 4 (6th Cir. 1999) (refusing to consider unpled theory of recovery asserted for the first time in response for summary judgment).

Finally, although Jackson brought suit against the unknown members of the Gamma Chapter in his complaint, he has failed to connect any individual with the events of February 20, 2010. He has not moved to amend his complaint to include individual defendants and the Court's scheduling order required him to do so by December 15, 2011. DN 12. Such inaction undermines his present request to extend the discovery period to locate a potential tortfeasor. The Court is disinclined to grant Jackson an extension and will instead dismiss these unnamed

parties as well.[3] *See Smith v. City of Chattanooga*, 1:08-CV-63, 2009 WL 3762961, at \*5 (E.D. Tenn. Nov. 4, 2009) (dismissing claims against John Doe defendants where plaintiffs had failed to substitute real parties by the end of the discovery period).

## CONCLUSION

Plaintiff has failed to allege any actionable theories of recovery against the remaining defendants. Accordingly, Defendants' motion for summary judgment is hereby GRANTED. This matter is DISMISSED. The Clerk of Court is directed to strike this matter from the active docket. An appropriate order shall issue.

---

[3] In the present briefing, the parties did not address Jackson's claims for assault and battery against the unknown members of the Gamma Chapter. Complaint, DN 1 ¶ 25. As he cannot produce a specific individual to assert these claims against, the Court will discard them.